UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES W. MARLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:14-cv-157 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Charles W. Marley, on May 22, 2014. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Charles W. Marley, filed an application for Disability Insurance Benefits on June 19, 2009, and for Supplemental Security Income on April 28, 2010, alleging a disability onset date of November 5, 2008. (Tr. 102). The Disability Determination Bureau denied Marley's application on October 29, 2009, and again upon reconsideration on November 16, 2009. (Tr. 102). Marley subsequently filed a timely request for a hearing on November 19, 2009. (Tr. 102). A hearing was held on September 14, 2010, before Administrative Law Judge (ALJ) John Pope, and the ALJ issued an unfavorable decision on December 3, 2010. (Tr. 102–10). Vocational Expert (VE) Michelle Peters testified at the hearing. (Tr. 102). The Appeals Council granted review and remanded the case to an ALJ. (Tr. 120).

On January 11, 2011, Marley filed a subsequent claim for benefits. (Tr. 121). The Appeals Council found the subsequent claim duplicative and consolidated the new claim and the

remanded claim into one. (Tr. 444). A second hearing was held on September 21, 2012, before ALJ Steven J. Neary, and the ALJ issued an unfavorable decision on December 4, 2012. (Tr. 14–25). VE Marie N. Kieffer, Denny Garrett, Marley's brother, and Marley testified at the hearing. (Tr. 14). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–10).

The ALJ found that Marley met the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 16). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Marley had not engaged in substantial gainful activity since November 5, 2008, the alleged onset date. (Tr. 16). At step two, the ALJ determined that Marley had the following severe impairments: degenerative disc disease, coronary artery disease status post angioplasty, osteoarthritis of the knees, bipolar disorder, and cannabis dependence. (Tr. 16). At step three, the ALJ concluded that Marley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 17). In determining whether Marley had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered Listing 1.00 for musculoskeletal impairment, Listing 4.00 for cardiovascular disease, Listing 12.04 for affective disorders, Listing 12.06 for anxiety disorders, and Listing 12.09 for substance addiction disorders. (Tr. 17). For Listing 12.04, the ALJ considered the Paragraph B criteria and the Paragraph C criteria. (Tr. 18–21).

As part of the Paragraph B criteria, the ALJ found that Marley had moderate difficulties in concentration, persistence, and pace. (Tr. 20). Marley spent hours watching television, using the computer, and playing video games each day without any apparent difficulty. (Tr. 20). He has performed semi-skilled to skilled work previously and completed two years of college. (Tr.

2

20).  Marley has average intelligence and has not been diagnosed with an attentional disorder.
(Tr. 20).  Marley testified that his psychotropic medication had controlled his manic phases but that he lacked motivation and energy because of depression caused by bipolar disorder.  (Tr. 20).  Additionally, Marley's brother testified that he was less scatterbrained now.  (Tr. 20).

In 2009, a consultative psychological examiner suggested that marijuana could be negatively affecting Marley's energy and motivation but that Marley had adequate concentration and attention.  (Tr. 20).  During the exam, Marley's responses were thorough, his abstract reasoning was strong, his memory was good, and he had no cognitive deficits.  (Tr. 20).  However, the ALJ found no other evidence that marijuana use had impacted Marley since his alleged onset date.  (Tr. 20).  On March 9, 2010, Dr. Negi evaluated Marley and found that he had a GAF of 55, which indicated moderate difficulty with functioning.  (Tr. 20).  At that time, Marley was not using his prescription medications and had poor concentration, but he appeared to have average intelligence.  (Tr. 20).

On March 26, 2011, Marley had a second consultative psychological exam and was able to maintain his concentration and attention.  (Tr. 20).  Marley's fund of information and ability to abstract were adequate, his IQ appeared average, but his memory was below average.  (Tr. 20).  He could not complete serial 7s and his GAF was 57, which indicated moderate difficulty with sustaining functioning.  (Tr. 20–21).  However, Marley's subsequent treatment records indicated stable functioning.  (Tr. 21).  A reviewing State Agency psychologist concluded that Marley had moderate difficulty with sustaining concentration, persistence, and pace but found that he could handle simple routine tasks.  (Tr. 21).  The ALJ gave those opinions great weight because they were consistent with the medical evidence as opposed to Marley's and his brother's testimony.  (Tr. 21).

The ALJ then assessed Marley's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant cannot climb, crawl, or kneel; he can occasionally balance and stoop. He is limited to simple routine tasks with no more than superficial contacts with other people.

(Tr. 21). The ALJ explained that in considering Marley's symptoms he followed a two-step process. (Tr. 22). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Marley's pain or other symptoms. (Tr. 22). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Marley's functioning. (Tr. 22).

The ALJ found that Marley's medically determinable impairments could reasonably cause some of the alleged symptoms. (Tr. 22). However, the ALJ found Marley's testimony that he did not come out of his room or leave his home for several days each month incredible. (Tr. 22). Additionally, he found Marley incredible regarding his marijuana use and the extent and nature of his pain. (Tr. 22). The ALJ concluded that Marley had some moderate difficulty with sustaining concentration, persistence, and pace. (Tr. 22). Therefore, the ALJ limited him to simple routine tasks. (Tr. 22).

At step four, the ALJ found that Marley could not perform his past relevant work. (Tr. 23). Considering Marley's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Marley could perform, including electrical accessory assembler (200 jobs regionally, 2,000 jobs in Indiana, and 100,000 jobs nationally), small products assembler (3,000 jobs regionally, 50,000 jobs in Indiana, and 900,000 jobs

nationally), and laundry folder (200 jobs regionally, 3,000 jobs in Indiana, and 200,000 jobs nationally).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job

experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Marley has argued that the ALJ erred because he determined that Marley had moderate limitations in concentration, persistence, and pace, and failed to incorporate those limitations into the hypotheticals he posed to the VE. Furthermore, he has argued that the ALJ erred because none of the exceptions apply. The ALJ's hypothetical asked the VE to assume an individual with the same age, education, and work history as Marley. (Tr. 54). Additionally, the individual was limited to light or sedentary work and could not climb, crawl, or kneel, but could balance and stoop occasionally. (Tr. 54). The ALJ then included the following mental limitations:

> [f]urther assume that the individual could not engage in complex or detailed tasks, but remain[s] capable of simple, routine tasks consistent with unskilled work that could be performed throughout the workday. Further assume that the individual would be limited to superficial relations with supervisors, co-workers and others. By superficial I mean just ordinary contact with others.

(Tr. 54). Based on that hypothetical the VE determined that Marley could not perform his past relevant work but could perform other work that existed in significant numbers in the national economy. (Tr. 54–55).

The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). That includes any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857;

7

*O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

However, ALJs do not need to explicitly state "concentration, persistence, or pace" in the hypothetical for all cases. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619. Rather, a court may assume a VE's familiarity with a claimant's limitations, despite deficiencies in the hypothetical, when the VE independently reviewed the medical record or heard testimony directly addressing those limitations. *O'Connor-Spinner*, 627 F.3d at 619; *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). This exception does not apply if the ALJ poses a series of increasingly restrictive hypotheticals because courts infer that the VE's attention is focused on the hypotheticals and not the record. *O'Connor-Spinner*, 627 F.3d at 619; *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Marley has argued that this exception does not apply because the ALJ posed a series of increasingly restrictive hypotheticals, and the Commissioner has not disputed that argument. The court agrees that the ALJ asked a series of increasing restrictive hypotheticals. Therefore, this exception does not apply.

An ALJ's hypothetical may omit "concentration, persistence, or pace" when it is apparent that the ALJ's phrasing specifically excluded tasks that someone with the claimant's limitations could not perform. *O'Connor-Spinner*, 627 F.3d at 619. For example, courts have upheld hypotheticals that restricted a claimant to low-stress work when the limitations were stress or panic related. *See* **Johansen v. Barnhart**, 314 F.3d 283, 285, 288–89 (7th Cir. 2002) (upholding

a hypothetical formulated in terms of "repetitive, low-stress" work because the description eliminated positions likely to trigger symptoms of the panic disorder that originated the claimant's moderate limitations in concentration, persistence, or pace); ***Arnold v. Barnhart***, 473 F.3d 816, 820, 823 (7th Cir. 2007) (upholding a hypothetical that restricted the claimant to low-stress, low-production work when stress-induced headaches, frustration, and anger caused the claimant's difficulties in concentration, persistence, or pace). Marley has argued that this exception does not apply because the ALJ did not use the term "low-stress work," his limitations were not stress or panic related, and the Commissioner has not disputed that argument. The court agrees that the ALJ did not use the term "low-stress work" and that Marley's limitations are not stress or panic related. Therefore, this exception does not apply.

Courts may uphold a hypothetical that does not mention "concentration, persistence, or pace" when the underlying conditions were mentioned and the link between the underlying condition and the concentration difficulties was apparent enough to incorporate those difficulties by reference. *See **Simila***, 573 F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific limitations was "troubling"). Generally, terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. ***Stewart***, 561 F.3d at 684–85 (finding a hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see **Kasarsky v. Barnhart***, 335 F.3d 539, 544 (7th Cir. 2003) (finding hypothetical posed as individual of borderline intelligence did not account for limitations of concentration). Marley has argued that this exception does not apply because the ALJ did not mention his underlying conditions in the hypothetical, and the Commissioner has

9

not disputed that argument. The ALJ did not mention Marley's underlying conditions, and therefore, this exception does not apply.

The Commissioner has argued that the ALJ did not err because he relied on an RFC from a medical source to formulate the hypothetical. If a medical expert makes an RFC determination, the ALJ may reasonably rely on that opinion to formulate a hypothetical posed to a VE. *Johansen v. Barnhart*, 314 F.3d at 289; *see Calhoun v. Colvin*, 2013 WL 3834750, at *10 (N.D. Ind. July 24, 2013) (upholding a hypothetical to a VE when the ALJ did not include a limitation in concentration, persistence, and pace but relied almost verbatim on a medical expert's RFC). In *Milliken*, a medical expert found that the claimant could perform unskilled work despite her limitations in concentration, persistence, and pace. *Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir. 2010). The ALJ's hypothetical to the VE limited the claimant to unskilled work but did not include limitations in concentration, persistence, and pace. *Milliken*, 397 F. App'x at 222. However, the Seventh Circuit upheld the hypothetical because it adequately accounted for the claimant's limitations in concentration, persistence, and pace by incorporating the medical expert's assessment that she could perform unskilled work. *Milliken*, 397 F. App'x at 222.

In this case, Dr. Joseph Pressner, a state agency psychologist, completed a Psychiatric Review Technique and a Mental RFC Assessment. (Tr. 840–57). Dr. Pressner found that Marley had affective disorders and rated his degree of limitations as mild limitations in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (Tr. 844, 854). Although Dr. Pressner concluded that Marley had a severe impairment, he did not find that Marley's impairments met or equaled the criteria of a Listing. (Tr. 854–55).

Dr. Pressner also assessed Marley's RFC as follows:

> [t]he evidence suggests that the [claimant] is able to understand, remember, and carry-out simple tasks. The [claimant] can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The [claimant] can attend to task for sufficient periods of time to complete tasks. The [claimant] can manage the stresses involved with simple work.

(Tr. 842). Therefore, Dr. Pressner concluded that Marley could perform simple work, despite his moderate limitations in concentration, persistence, and pace.

Marley has presented persuasive authority from the Southern District of Indiana that distinguished *Johansen* and rejected *Milliken*, an unpublished decision. *E.g.*, *Miller v. Colvin*, 2013 WL 796722, at *3–4 (S.D. Ind. Mar. 1, 2013). However, courts within this district have followed *Johansen* and *Milliken*, as have other courts within the Southern District of Indiana. *E.g.*, *Suthers v. Colvin*, 2014 WL 772605, at *6 (N.D. Ind. Feb. 25, 2014); *Calhoun*, 2013 WL 3834750 at *10; *Torres v. Colvin*, 2014 WL 4587153, at *17 (N.D. Ind. Sept. 15, 2014); *Dehart v. Colvin*, 2013 WL 6440504, at *4 (S.D. Ind. Dec. 9, 2013). Although *Milliken* is not binding, this court will follow that opinion along with the other opinions from this district.

Marley also has complained that the ALJ failed to account for the distinction between the ability to learn how to do a task of a given complexity and the ability to stick with a task over a sustained period of time. However, Dr. Pressner acknowledged that Marley had moderate limitations in his ability to maintain attention and concentration, yet he determined that he could manage simple work. Furthermore, Dr. Pressner concluded that Marley could "attend to task for sufficient periods of time to complete tasks." (Tr. 842). The ALJ adopted this opinion, which reflected that Marley had the ability both to carry out instructions and to complete tasks in their entirety. The court finds that this accounts for both Marley's ability to learn and to sustain tasks until completion.

11

Similar to *Johansen* and *Milliken*, the ALJ relied on a medical source's RFC to formulate the hypothetical to the VE. The ALJ's hypothetical limited Marley to "simple, routine tasks consistent with unskilled work" and "to superficial relations with supervisors, co-workers and others." Although not verbatim, the ALJ's hypothetical incorporated Dr. Pressner's RFC that Marley could perform simple work. Therefore, the ALJ adequately accounted for Marley's moderate limitations in concentration, persistence, and pace and did not err.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 1st day of July, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge